FEDERAL TRADE COMMISSION,
Plaintiff,

v.

AMERICAN STANDARD CREDIT
SYSTEMS, INC., et al.,
Defendants.

No. CV 93–2623 LGB (JRx).

United States District Court,
C.D. California.

Aug. 8, 1994.

Rolando Berrelez, Judith Dixon, Federal Trade Com'n Div. of Credit Practices, Washington, DC, for plaintiff F.T.C.

Alexander McDonald, San Diego, CA, for defendants Farmer, Deitel & Lick.

Barry Hovis, Linda Lipscomb, Sadler & Hovis, San Francisco, CA, for third-party defendant First Nat'l.

## ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS THREE, FOUR, AND FIVE

BAIRD, District Judge.

Plaintiff's motion for summary judgment as to counts three, four, and five in Plaintiff's complaint, came on regularly for hearing before this Court on August 8, 1994. After reviewing the materials submitted by the parties, argument of counsel, and all other matters presented to the Court, it is hereby ORDERED that Plaintiff's motion is GRANTED.

### I. Procedural Background

On May 5, 1993 the Federal Trade Commission ("FTC") filed this action against American Standard Credit Systems, Inc. ("ASCS") and three of its officers, Robert M. Farmer, Douglas R. Deitel, and Scott T. Lick,[1] for allegedly committing deceptive acts and practices in violation of § 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a). On June 25, 1993 the individual defendants (hereinafter "Defendants") filed a third-party complaint against the

---

1. Farmer was a shareholder, director, and the Chief Executive Officer of ASCS between November, 1988 and July, 1991. (Plaintiff's Statement of Uncontroverted Facts ("Plaintiff's Facts") ¶¶ 6–9.) Deitel was president of ASCS between November, 1988 and July, 1991. (Plaintiff's Facts ¶ 21.) Lick was the marketing director of ASCS. (Plaintiff's Facts ¶¶ 32–35.)

First National Bank of Marin ("FNBM") for indemnification.

On February 11, 1994 this Court entered a default judgment against Defendant ASCS. On February 18, 1994 Plaintiff filed a motion for summary judgment against Defendants as to counts three, four, and five in Plaintiff's complaint. By minute Order dated March 28, 1994 this Court denied the motion because Plaintiff failed to properly authenticate documents submitted in support of the motion. On March 4, 1994, FNBM filed a motion for summary judgment as to Defendants' cross-claim, and this Court granted such motion on April 4, 1994. Therefore, the only action that remains is the FTC's complaint against the individual defendants.

A pre-trial conference was scheduled for May 2, 1994, but was not held as a result of bankruptcy petitions filed by Defendants Farmer and Deitel. A portion of Plaintiff's supplement to its memorandum of contentions of fact and law argued that Plaintiff's action was exempt from the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and that therefore the action should go forward. The Court deemed such argument as a motion to keep the case on active caseload, and scheduled a telephonic hearing for May 26, 1994 at 12:15 p.m. At the hearing the Court granted Plaintiff's motion[2] and set a new pre-trial conference date for September 12, 1994 and a new trial date for September 27, 1994.

On June 7, 1994 Plaintiff filed an ex parte application for an order enlarging the time within which Plaintiff could resubmit its motion for summary judgment. This Court granted the ex parte application and gave Plaintiff until July 15, 1994 to resubmit such motion. Plaintiff filed its motion on July 14, 1994, and this motion is now before the Court. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 15 U.S.C. § 53(b).

## II. Undisputed Facts [3]

The allegedly deceptive practices in this case occurred in connection with ASCS's marketing of VISA and Mastercards for FNBM. In January of 1989 ASCS executed an agreement with FNBM whereby ASCS agreed to provide FNBM credit card marketing, solicitation, application, account processing, and other services related to the establishment of credit card accounts. (Plaintiff's Facts ¶¶ 36–37; Ex. 23.[4]) ASCS commenced marketing FNBM secured credit cards through various third-party marketers in March of 1989. (Plaintiff's Facts ¶ 39.) As of June of 1989, ASCS had contracted with "SCCP" and Professional Financial Associates ("PFA") to market FNBM secured credit cards. (Plaintiff's Facts ¶ 40.) In July, ASCS contracted with Thom 2 Productions to develop television commercials featuring country recording artist T.G. Sheppard to market secured credit cards. (Plaintiff's Facts ¶ 44.)

Beginning in January of 1990, ASCS expanded its marketing program, employing third-party marketers to promote and advertise FNBM secured credit cards through the use of "900" pay-per-call telephone numbers.

**2.** Section 362(b)(5) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, provides that the automatic stay does not operate as a stay "of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(5) (West 1993) (emphasis added).

**3.** In the proposed pre-trial conference order jointly submitted by both parties at the May 2, 1994 pre-trial conference (which was not held), the parties admitted various facts which require no proof. *See* Pre–Trial Conference Order Lodged April 2, 1994 ("PTCO") § V (found at Plaintiff's Ex. "B"). These facts are identical to the facts Plaintiff has set forth in its statement of uncontroverted facts and conclusions of law. Furthermore, Defendants' statement of genuine issues fails to refer to admissible evidence which controverts the facts included in Plaintiff's state-

ment of uncontroverted facts. Therefore, the Court finds that all facts included within Plaintiff's statement of uncontroverted facts exist without controversy. *See* Local Rule 7.14 ("In determining any motion for summary judgment, the court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Issues" and (b) controverted by declaration or other written evidence filed in opposition to the motion.").

**4.** The exhibits Plaintiff has submitted in support of its motion were included in the joint list of exhibits that the parties submitted prior to the May 2, 1994 pre-trial conference. Plaintiff and Defendants stipulated to the admissibility of all of the listed exhibits without objection. *See* PTCO § X.

(Plaintiff's Facts ¶¶ 45–50, 61.) In January of 1990, ASCS entered into an agreement with Interactive Marketing Concepts ("IMC") relating to the "900" pay-per-call marketing of FNBM's secured credit cards. (Plaintiff's Facts ¶ 49, Ex. 9.) ASCS also entered into a "900 Response Contractor Agreement" ("RCA") with the President of IMC, Donald Hellinger, or his corporate nominee. (Plaintiff's Facts ¶ 50, Ex. 15.) Under this agreement, Hellinger would provide creative scripts, advertising, TV time, and "900" pay-per-call costs associated with marketing the FNBM secured credit card program. Hellinger would receive all revenues from "900" responses, and would forward to ASCS the name and address information of responding consumers along with a $.50 processing fee for each name. ASCS would then send an application form to the responding consumer and would pay Hellinger $20 of the application fee, if any, ultimately received by ASCS. Throughout 1990, ASCS entered into several RCAs with other third-party marketers. (Plaintiff's Facts ¶ 61; Exs. 3, 38, 55–64.)

The RCAs provided that "CONTRACTOR agrees not to make any oral or written representations of any kind regarding the Secured Credit Card Program, VISA and/or MASTERCARD whether in print advertising, scripts, completed TV commercials, live operator or machine answering messages to callers without prior written consent of ASCS." (Plaintiff's Facts ¶¶ 62–64; Exs. 3, 15, 38, 55–64.) Furthermore, on August 24, 1990, Doug Deitel sent a memorandum to all marketing service providers which stated: "A complete copy of all proposed advertising must be submitted *in advance* and approved *in writing* before any insertion order is made. This includes all TV commercials, FSI's, Post Cards, Radio, Direct Mail, Etc." (Ex. 44.)

In keeping with this, Farmer, Deitel, and Lick reviewed the marketing materials used to promote FNBM secured credit cards. (Plaintiff's Facts ¶¶ 17, 29–30, 34, 56–58; Exs. 12, 35, 40–42, 48, 49.) ASCS notified third-party marketers in advance of use that all "900" pay-per-call marketing materials promoting FNBM secured credit cards had been approved. (Plaintiff's Facts ¶¶ 69–74; Exs. 11, 35, 41, 42, 48, 49.) The "900" marketing materials used by marketers include exhibits 1, 2, and 17,[5] as well as copies of those exhibits with the marketer's own "900" number inserted. (Plaintiff's Facts ¶¶ 52–58; Exs. 36,[6] 67, 68, 83.) ASCS, through Deitel and Lick, also provided ASCS marketers with sample print advertisements, television commercials, and audio text-scripts to use in marketing FNBM secured credit cards. (Plaintiff's Facts ¶¶ 65–68; Exs. 7, 34.)

Statements in Exhibits 1 and 2, and in virtually · identical advertisements used by marketers, include:

### ANYONE CAN QUALIFY FOR VISA AND MASTERCARD

**Separated? Divorced? Bankrupt? Widowed? Military?**

**Bad Credit? No Credit?**

**No Problem!**

**Make the Call and Get the credit you deserve NOW!**

The statement "anyone [or everyone] can qualify" was prominently featured in many of

---

**5.** Exhibits 17 is a video tape of five commercials used by third-party marketers, the audio text of which is found at Exhibit 18. The spokesman in the commercials states that "almost anyone can qualify" for an FNBM secured credit card "regardless of your past credit history," and the words "Anyone Can Qualify" and "Regardless of Your Past Credit History" are displayed prominently at the top of the screen. About midway through the commercials, an illegible disclosure is displayed at the bottom of the screen. After considerable effort by the Court, the Court was able to determine that the disclosure stated, at least in part: "savings account required; credit line equal to amount of deposit; minimum deposit $300; minimum household income of $3,000." This disclosure is displayed for a little over one second. The commercials also state

that consumers who are turned down will be refunded the cost of the call.

**6.** Exhibit 36 is also a video tape containing a set of commercials. The spokesman states: "If you're among the 50 million [or millions] Americans denied credit, even if you're divorced or bankrupt, First National Bank of Marin has a money back no risk secured VISA or Mastercard offer for you." Prominently displayed at the top of the screen are the words "Even Divorced or Bankrupt." At the end of the commercials a very small but legible disclosure is *briefly* made that a savings account is required and that applicants must be over 18. The commercials state that applicants who are turned down will be refunded the cost of the call.

ASCS's advertisements (Exs. 1, 2, 12, 17, 36, 68, 82, 83, 109.) Furthermore, other statements in ASCS approved advertising promised that even people with past credit problems would be approved for an FNBM secured credit card. (Exs. 1, 2, 12, 67, 68, 82, 83.) However, not everyone could qualify for an FNBM credit card. From May 1989 through July 1991, FNBM had in existence credit granting criteria. (Plaintiff's Facts ¶ 101.) For example, FNBM considered whether an applicant had a current, open bankruptcy proceeding, or a charge-off on any secured bank credit card in determining whether to approve an application. (Plaintiff's Facts ¶¶ 80–81; Exs. 25, 45, 46.)[7] Farmer, Deitel, and Lick knew of FNBM's credit granting criteria and knew that FNBM applied that criteria in evaluating applicants. (Plaintiff's Facts ¶¶ 83–88, 93, 95–96, 97–100.)

Furthermore, ASCS and its marketers failed to disclose that there were additional costs and conditions consumers had to meet to qualify for an FNBM credit card. For example, consumers had to have a minimum household income, had to pay an application fee (which Plaintiff contends was $60),[8] and had to make a minimum $300[9] savings deposit with FNBM to secure their line of credit. (Deitel Dep. pp. 156–57; Exs. 45, 46; Plaintiff's Facts ¶¶ 86, 89–92, 94, 97–99.) Since at least September of 1989 Farmer was aware that applicants had to meet these requirements. (Plaintiff's Facts ¶¶ 86, 89–90; Ex. 54.) Since at least September of 1989 Deitel knew that consumers were required to pay an application fee, and since at least May of 1989 Deitel knew of the savings account and minimum income requirements. (Plain-

tiff's Facts ¶¶ 91–92, 94; Exs. 45, 46; Deitel Dep. pp. 156–57.) Lick was aware of these qualifying criteria since early 1990. (Plaintiff's Facts ¶¶ 97–99.)

Exhibit 1 was used by third-party marketers between March of 1990 and September of 1990, and Exhibit 2 was used between August of 1990 and July of 1991. (Plaintiff's Facts ¶¶ 52–53; Ex. 47.) Between March of 1990 and July of 1991, third-party marketers used the advertising copy of Exhibits 1, 2, and 17 to advertise the FNBM secured credit cards, but inserted their own "900" telephone numbers. (Plaintiff's Facts ¶ 54.) The cost of calling the "900" pay-per-call numbers listed on Exhibits 1, 2, and 17, as well as other identical advertising using different "900" telephone numbers, was $9.95. (Plaintiff's Facts ¶ 78.)

On the basis of the foregoing facts, Plaintiff claims that Defendants are liable for deceptive acts and practices under § 5(a) of the FTCA. Plaintiff's complaint alleges five counts, but Plaintiff here seeks judgment only on counts three, four, and five. Count 3 alleges that Defendants failed to disclose in connection with "900" number advertising that consumers can only obtain a VISA or Mastercard by paying a processing fee and making a minimum deposit of $300, and that such an omission is a deceptive practice under the FTCA. Count 4 alleges that Defendants failed to disclose that consumers must meet certain minimum qualifying criteria to even apply for a VISA or Mastercard, and that such an omission is a deceptive practice under the FTCA. Count 5 alleges that Defendants violated the FTCA by acting in concert with marketers who made misrepre-

---

**7.** In a letter written by Deitel to FNBM proposing the credit criteria ASCS would use in evaluating applicants, one of the criterium is:

Credit report must not show unresolved bankruptcy, serious current credit defaults, a history of charge-offs or judgements involving other credit card accounts, a criminal record, or any other information of a negative or suspicious nature that would indicate a high potential for losses.

(Ex. 45.) Furthermore, in a September 7, 1989 letter written by FNBM to Farmer, FNBM stated that in order to qualify for a credit card, an applicant, *inter alia*, must provide:

A credit report from an established credit reporting agency that shows no current serious credit defaults, no criminal record, or no other information that would indicate to a reasonable person that the applicant has a high potential for abusing a secured credit card.

(Ex. 54.)

**8.** Plaintiff has introduced no evidence as to the amount of the application fee. However, Plaintiff's brief argues that it was $60, and Defendants do not contest this argument.

**9.** Defendants concede that the minimum deposit amount was $300. (Opp. at 7.)

sentations and omissions in connection with advertising "900" numbers.

### III. Discussion

#### A. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). Furthermore, if the moving party has the burden of proof at trial, that party must establish peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for [the nonmovant]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. at 2510.

#### B. Defendants' General Defenses to Plaintiff's Motion

##### 1. Jurisdiction

Defendants argue that this Court does not have jurisdiction over this matter. Defendants contend that because ASCS was the agent of FNBM, and FNBM is exempt from the FTCA, ASCS should likewise be found to be exempt from the FTCA. (Opp. at 3–4.) Section 45(a)(2) of the FTCA provides that "[t]he Commission is empowered and directed to prevent persons, partnerships, or corporations, *except banks* ... from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce" (emphasis added). Given that banks are exempted from regulation, Defendants argue that "[i]t is apparent that an agent of a national bank, acting within the course and scope of the agency, must be excluded from the FTC's jurisdiction as well." (Opp. at 4.)

However, Defendants have failed to cite any caselaw in support of such a proposition. Furthermore, the exclusion of banks from FTC jurisdiction appears to have been motivated by the fact that banks are already subject to extensive federal administrative controls. *See U.S. v. Philadelphia Nat'l Bank,* 374 U.S. 321, 336 n. 11, 83 S.Ct. 1715, 1726 n. 11, 10 L.Ed.2d 915 (1963). Defendants have failed to show that ASCS, as the purported agent of a bank, is likewise subject to extensive administrative controls and should therefore be excluded from the FTCA. Furthermore, this Court found in the Order it issued in connection with FNBM's motion for summary judgment that ASCS is not the agent of FNBM. *See* April 4, 1994 Order Re FNBM's Motion for Summary Judgment at 6–7. Therefore, this Court finds that it has jurisdiction over this matter.

##### 2. Enjoining Terminated Behavior

Defendants also argue that the FTC is only empowered to enjoin present unlawful

practices and prevent their recurrence in the future. (Opp. at 5.) Because the use of pay-per-call advertising has been prohibited by both VISA and Mastercard since May of 1992, Defendants argue that the FTC has no power to enjoin Defendants from engaging in deceptive advertising in connection with the pay-per-call program. However, prohibitions by VISA and Mastercard do not have the force and effect of a court injunction, which carries with it the penalty of contempt. Furthermore, just because Defendants have been prohibited from employing a pay-per-call program in connection with VISA and Mastercard credit cards does not guarantee that they will not engage in such activity in connection with other credit cards.

■ Furthermore, "[i]t is settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to' (their) old ways." *Allee v. Medrano*, 416 U.S. 802, 811, 94 S.Ct. 2191, 2198, 40 L.Ed.2d 566 (1974). *See also Fedders v. Federal Trade Commission*, 529 F.2d 1398, 1403 (2d Cir.1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) ("The fact that [defendant] may have discontinued the offending practice before the commission issued the complaint ... does not bar a cease-and-desist order, where the public interest otherwise requires it.") As Defendants have failed to show that there is no possibility that the alleged offending conduct will recur, the fact that Defendants have terminated their behavior is irrelevant.

## C. Plaintiff's Motion for Summary Judgment as to Counts Three and Four

■ Section 5(a) of the FTCA prohibits the use of "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 15 U.S.C.A. § 45(a) (West 1973). Section 13(b) of the Act provides that the FTC in a "proper case" may seek a permanent injunction to enjoin violations of the Act. 15 U.S.C.A. § 53(b) (West 1973). The Ninth Circuit has held that a routine fraud case is a "proper case" under § 13(b). *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir.1982). Further-

more, consumer redress, including rescission of contracts, may be ordered in a routine fraud case under § 13(b). *Id.* at 1113. Plaintiff here requests that this Court enjoin Defendants from further engaging in their alleged deceptive practices, and that Defendants be required to pay restitution.

### 1. Injunctive Relief

■ An officer of a corporation may be held individually liable for injunctive relief under the FTCA for corporate practices if the FTC can prove (1) that the corporation committed misrepresentations or omissions of a kind usually relied on by a reasonably prudent person, resulting in consumer injury, and (2) that the individual defendants participated directly in the acts or practices or had authority to control them. *F.T.C. v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir.1989), *cert. denied*, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *F.T.C. v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1292 (D.Minn.1985).

### a. Misrepresentation or Omission by ASCS

■ The test for deception is whether "there is a representation, omission or practice that is likely to mislead the consumer acting reasonably under the circumstances." *Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431 (9th Cir.1986), *cert. denied*, 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986); *Clifdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984).

Count 3 of Plaintiff's complaint is based on Defendants' alleged failure to disclose that consumers can only obtain a VISA or Mastercard by paying a processing fee and making a minimum deposit of $300. The undisputed facts show that consumers had to pay an application fee and had to make a minimum $300 deposit with FNBM to secure their line of credit. (Deitel Dep. pp. 156–57; Exs. 45, 46; Plaintiff's Facts ¶¶ 89–92, 97–98.) The facts also show that the advertising approved by ASCS failed to disclose this requirement. (Plaintiff's Facts ¶¶ 52–58; Exs. 36, 67, 68, 83.) Therefore, it was not until after consumers paid $9.95 to call a "900" number that they learned of the appli-

cation fee and the minimum deposit requirement.

These omissions were likely to mislead consumers acting reasonably under the circumstances as it is likely that many consumers would not have made the call had they known of these requirements. Therefore, the omissions were deceptive under § 5 of the FTCA. *See Southwest Sunsites, supra; Clifdale Assocs., Inc., supra.*

■ Count 4 of Plaintiff's complaint is based on Defendants' alleged failure to disclose that consumers must meet certain minimum qualifying criteria to even apply for a VISA or Mastercard. The undisputed facts show that advertisements approved by ASCS included the statement "anyone [or everyone] can qualify" for an FNBM secured credit card. (Exs. 1, 2, 12, 17, 36, 68, 82, 83, 109.) Furthermore, ASCS approved advertising promised that even people with past credit problems would be approved for an FNBM credit card. (Exs. 1, 2, 12, 67, 68, 82, 83.)

However, not everyone could qualify for an FNBM credit card. From May 1989 through July 1991, FNBM had in existence credit granting criteria. (Plaintiff's Facts ¶ 101.) For example, FNBM considered whether an applicant had a current, open bankruptcy proceeding, or a charge-off on any secured bank credit card in determining whether to approve an application. (Plaintiff's Facts ¶¶ 80–81; Exs. 25, 45, 46.) Furthermore, consumers had to have a minimum household income. (Deitel Dep. pp. 156–57; Exs. 45, 46; Plaintiff's Facts ¶¶ 86, 94, 99.)

The representations made in ASCS approved advertising that anyone could qualify, even those with past credit problems, were likely to mislead the consumer acting reasonably under the circumstances. Therefore, these representations were deceptive under § 5 of the FTCA. *See Southwest Sunsites, supra; Clifdale Assocs., Inc., supra.*

Defendants nonetheless argue that a genuine issue of fact exists as to whether the advertising complained of was Defendants' advertising. (Opp. at 6.) Defendants introduce declaration testimony by Farmer that "[a]ll advertising used in connection with the 900 number marketing program, specifically

including the print ad [at Exhibit 1], were created by an ad agency hired and paid by IMC," and that "ASCS did not approve the advertising materials used by IMC because neither ASCS nor the individual Defendants in this action had the authority to approve this or any other advertising for the FNBM secured bank credit card program." (Feb. 28, 1994 Farmer Decl. ¶¶ 11, 12.)

However, these conclusory statements are contrary to the undisputed facts. The RCA entered into between ASCS and Hellinger (IMC's President), provided that "CONTRACTOR agrees not to make any oral or written representations of any kind regarding the Secured Credit Card Program, VISA and/or MASTERCARD whether in print advertising, scripts, completed TV commercials, live operator or machine answering messages to callers *without prior written consent of ASCS.*" (Ex. 15 ¶ 3, emphasis added.) Furthermore, the evidence shows that Deitel approved Exhibit 1 by making changes to a prototype of that Exhibit and submitting the altered prototype back to IMC. (Deitel Dep. pp. 147–48; Exs. 48.) Finally, the undisputed evidence shows that ASCS notified third-party marketers in advance of use that all "900" pay-per-call marketing materials and advertising used to promote FNBM secured credit cards had been approved. (Plaintiff's Facts ¶¶ 69–74.)

■ Furthermore, it is no defense for Defendants to argue that the advertising was sanctioned by IMC. In *Amy Travel, supra,* the individual defendants argued that "their efforts to gain approval from counsel for their activities demonstrate they did not have the necessary knowledge that they were engaging in deceptive practices." *Amy Travel,* 875 F.2d at 575. The Court held:

The magistrate correctly found that the blessing of an attorney did not make the telemarketing scripts truthful. Obtaining the advice of counsel did not change the fact that the business was engaged in deceptive practices. The magistrate was satisfied that the FTC had proven that defendants had sufficient knowledge to find them individually liable. The court determined that reliance on advice of counsel was not a valid defense on the question of

knowledge; *counsel could not sanction something that the defendants should have known was wrong.*

*Id.* (emphasis added). Similarly, the blessing of IMC, FNBM, or anyone else for that matter, of advertising created by IMC could not sanction something that Defendants should have known was wrong.

### b. Participation or Control

■ To be entitled to injunctive relief, Plaintiff must next show that the individual defendants participated directly in ASCS's deceptive acts or practices, or had authority to control them. *See supra.* Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer. *Amy Travel*, 875 F.2d at 573–74; *Kitco*, 612 F.Supp. at 1292.

The undisputed evidence shows that Defendants actively participated in and controlled the acts and practices described above. Farmer, as Chief Executive Officer of ASCS, controlled the acts and practices of the company and administered its day-to-day operations. (Plaintiff's Facts ¶¶ 10–11.) Deitel, as President, participated in the day-to-day operations of the company. (Plaintiff's Facts ¶ 22.) Both Farmer and Deitel formulated, reviewed, approved, implemented, and disseminated the company's marketing policies and procedures. (Plaintiff's Facts ¶¶ 12–16, 23–27.) Lick, as marketing director of ASCS, implemented the company's marketing policies and procedures, and monitored the marketing activities of ASCS's third-party marketers between at least January of 1990 and November of 1990. (Plaintiff's Facts ¶¶ 32, 35.) Furthermore, Lick entered into "900" RCAs with third-party marketers to market FNBM's secured credit card. (Plaintiff's Facts ¶ 33.)

Based on all of the foregoing undisputed evidence, the Court finds that Defendants had authority to control ASCS's deceptive acts and practices. Therefore, Plaintiff is entitled to injunctive relief against Defendants under counts three and four of Plaintiff's complaint.

### 2. Restitution

■ To be held liable for restitution, the FTC must show, in addition to what has already been shown, that Defendants had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted. *Amy Travel*, 875 F.2d at 573–74; *Kitco*, 612 F.Supp. at 1292; *F.T.C. v. International Diamond Corp.*, 1983–2 Trade Cases (CCH) ¶ 65,725, 1983 WL 1911 (N.D.Cal.1983).

■ The knowledge requirement may be fulfilled by showing that the individuals had actual knowledge of material misrepresentations, were recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth. *Amy Travel* 875 F.2d at 574; *Kitco*, 612 F.Supp. at 1292. The degree of participation in business affairs is probative of knowledge. *Amy Travel*, 875 F.2d at 574. According to the undisputed facts, the knowledge requirement is satisfied in this case.

■ Farmer, Deitel, and Lick knew of FNBM's credit granting criteria, and knew that FNBM applied that criteria in evaluating applicants. (Plaintiff's Facts ¶¶ 83–88, 93, 95–96, 97–100.) These criteria included whether an applicant had a current, open bankruptcy proceeding, or a charge-off on any secured bank credit card. (Plaintiff's Facts ¶¶ 80–81; Exs. 25, 45, 46.) Farmer, Deitel and Lick were also aware that applicants had to meet minimum income and savings deposit requirements, and had to pay an application fee. (Plaintiff's Facts ¶¶ 86, 89–92, 94, 97–99; Ex. 45, 46, 54; Deitel Dep. pp. 156–57.) Farmer, Deitel, and Lick reviewed the marketing materials used to promote FNBM secured credit cards. (Plaintiff's Facts ¶¶ 17, 29–30, 34, 56–58; Exs. 12, 35, 40–42, 48, 49.) Furthermore, Farmer, Deitel, and Lick participated in the day-to-day operations of ASCS and controlled its marketing and advertising program, *see supra;* a fact which is probative of knowledge. *See Amy Travel*, 875 F.2d at 574.

As to the reliance element, Plaintiff need not prove the subject intent of each consumer, but only that the misrepresentations were the type upon which a reasonable and prudent person would rely. *F.T.C. v. Security Rare Coin & Bullion Corp.,* 931 F.2d 1312 (8th Cir.1991); *Amy Travel,* 875 F.2d at 573–74. Defendants' advertising stated that anyone can qualify for an FNBM secured credit card and that bad credit was "no problem." *See supra.* In fact, FNBM considered whether an applicant had a current, open bankruptcy proceeding, or a charge-off on any secured bank credit card in determining whether to approve an application. (Plaintiff's Facts ¶¶ 80–81; Exs. 25, 45, 46.) Furthermore, consumers had to pay an application fee and had to make a minimum $300 deposit with FNBM. These facts were not disclosed in ASCS approved advertising.

The Court finds that the misrepresentations and omissions found in Defendants' advertising were of the type that a reasonable person would rely. In other words, had people been aware of the credit criteria and/or the application fee and minimum savings deposit requirements, many would not have made the phone call to inquire about the FNBM credit card. Therefore, not only is the reliance element met, but so is the consumer injury requirement.

As to the amount of consumer injury, Plaintiff argues that this is the cost of each consumer's call to the "900" numbers listed on the deceptive advertising materials. (Motion at 18.) The parties stipulated in the pre-trial conference order that this is the only issue that remains to be litigated. (PTCO § VII, ¶ 1.) Therefore, Plaintiff does not seek summary judgment on the exact amount of consumer redress at this time. (Motion at 18.)

Accordingly, the Court hereby ORDERS that judgment be entered against Defendants only as to their *liability* for restitution of funds spent by consumers in calling "900" numbers. The amount of such restitution is an issue to be determined at trial. Plaintiff has proposed that instead of conducting a trial on the issue of the amount of restitution, the Court simply have the parties brief the issue. (Motion at 18–19.) However, Plaintiff

has submitted no authority for the proposition that simply briefing an issue is an adequate substitute for trial. Plaintiff has not moved for summary judgment as to the amount of restitution, and therefore a genuine issue of fact remains for trial. The parties shall therefore proceed to trial, and shall file their pre-trial documents in accordance with local and federal rules.

### C. Plaintiff's Motion for Summary Judgment as to Count Five

Plaintiff alleges in count 5 that:

By and through the acts and practices described above, defendants have violated section 5 of the FTC Act by acting in concert with, or knowingly and substantially assisting the marketers that employ the misrepresentations and deceptive failures to disclose set forth in Paragraphs 21–38, and providing the means and instrumentalities to the marketers for the commission of deceptive acts or practices.

(Complaint ¶ 40.) The Supreme Court has stated that it has long been a part of the law of unfair competition that a person is a wrongdoer under the FTCA "who so furnishes another with the means of consummating a fraud." *Federal Trade Commission v. Winsted Hosiery Co.,* 258 U.S. 483, 494, 42 S.Ct. 384, ——, 66 L.Ed. 729 (1922). Furthermore, in *Federal Trade Commission v. Magui Publishers, Inc.,* 1991–1 Trade Cases p. 69,425, 1991 WL 90895 (C.D.Cal.1991), *aff'd,* 9 F.3d 1551 (9th Cir.1993), the district court, whose opinion was upheld by the Ninth Circuit, held that "one who places in the hands of another a means or instrumentality to be used by another to deceive the public in violation of the FTC Act is directly liable for violating the act."

As discussed above, Farmer, Deitel, and Lick reviewed the marketing materials used to promote FNBM secured credit cards. (Plaintiff's Facts ¶¶ 17, 29–30, 34, 56–58; Exs. 12, 35, 40–42, 48, 49.) ASCS notified third-party marketers in advance of use that all "900" pay-per-call marketing materials promoting FNBM secured credit cards had been approved. (Plaintiff's Facts ¶¶ 69–74; Exs. 11, 35, 41, 42, 48, 49.) The "900" marketing materials used by marketers include

exhibits 1, 2, and 17, as well as copies of those exhibits with the marketer's own "900" number inserted. (Plaintiff's Facts ¶¶ 52–58; Exs. 36, 67, 68, 83.) ASCS, through Deitel and Lick, also provided ASCS marketers with sample print advertisements, television commercials, and audio text-scripts to use in marketing FNBM secured credit cards. (Plaintiff's Facts ¶¶ 65–68; Exs. 7, 34.)

Moreover, these advertising materials contained omissions and misrepresentations that were likely to mislead consumers acting reasonably under the circumstances, and therefore the materials were deceptive under § 5 of the FTCA. *See supra.* Therefore, the Court finds that Plaintiff is entitled to injunctive relief and restitution under count five of Plaintiff's complaint.[10]

### D. Conclusion

Based on all of the foregoing, the Court hereby ORDERS that Plaintiff's motion for summary judgment as to counts three, four, and five is GRANTED, and that Plaintiff be granted permanent injunctive relief and restitution (in an amount to be determined at trial).

**SO ORDERED.**

### JUDGMENT

Plaintiff Federal Trade Commission ("FTC" or "Commission") filed its Motion for Summary Judgment against the individual defendants, Robert M. Farmer, Douglas R. Deitel, and Scott T. Lick, on Counts III, IV, and V of plaintiff's complaint on July 14, 1994. Plaintiff's motion for summary judgment came on regularly for hearing before this Court on August 8, 1994. After consideration of the memoranda of law and exhibits submitted by the parties, arguments of counsel, and all other matters presented to the Court, and in accordance with the Statement of Uncontroverted Facts and Conclusions of Law signed and filed concurrently herewith, and incorporated herein, it is hereby ORDERED, ADJUDGED, and DECREED that

JUDGMENT be and hereby is entered on favor of Plaintiff and against Defendants as to Defendants' liability under counts III, IV, and V of Plaintiff's complaint.

Furthermore, it is by the Court this ____ day of _____, 1994, **ORDERED, ADJUDGED, AND DECREED** that:

1. This Court has jurisdiction of the subject matter herein and of the parties hereto and venue is proper in this Court. The complaint states a claim upon which relief may be granted against defendants under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), as amended.

2. For purposes of this Order:

(a) "Pay-per-call" shall mean any telecommunications services which permit simultaneous calling by a large number of callers to a single telephone number and for which the calling party is assessed, by virtue of completing the call, a charge that is not dependent on the existence of a pre-subscription relationship and for which the caller pays a per-call or per-time-interval charge that is greater than, or in addition to, the charge for transmission of the call;

(b) "Credit card" or "credit-related service or program" means any form of credit offered by or through defendants including but not limited to Visa and MasterCard, or any other type of credit card, line of credit, or method of providing credit, or services or programs that establish or result in establishing credit for a person.

(c) "Clearly and conspicuously" shall mean:

1. In a video advertisement, the disclosures shall be displayed as a legible superscript with a simultaneous voice-over recitation of the disclosures in a manner designed to ensure clarity and prominence;

2. In a print advertisement, the disclosures shall be printed in a typeface and color that are clear and prominent. In

---

**10.** Defendants argue that "neither ASCS nor the individual defendants provided IMC anything more than exemplars of advertising materials previously approved by FNBM," and that "[t]his alone poses a material question of fact and must be tried." (Opp. at 7–8.) However, as discussed above, the blessing of FNBM, or anyone else for that matter, of IMC's advertising could not sanction something that Defendants should have known was wrong.

a multi-page document, the disclosures shall appear on the cover or first page;

3. In a radio advertisement, the disclosures shall be included in a manner designed to ensure clarity and prominence; and

4. In a "900," "976" or other pay-per-call information service message, the disclosures shall be included at the beginning of the message in a manner designed to ensure clarity and prominence with sufficient time for the caller to choose not to continue the call and avoid telephone charges, or, if they choose to continue the call, to record all information needed to obtain the credit service or program upon first hearing of the message, including the address where a request must be sent.

### I.

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, offering for sale, or sale of any credit card or credit-related service or program, through the use of "900," "976," other pay-per-call information service, or by any other means, defendants R.M. Farmer, Douglas R. Deitel, and Scott T. Lick, each of them and their successors, assigns, officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any business entity, corporation, subsidiary, division, or other device, are permanently enjoined from disseminating or causing to be disseminated any advertisement or promotional material, whether written or presented in any visual or audio medium, that:

A. Fails to disclose clearly and conspicuously whether any telephone number which consumers are required to call to utilize defendants' services will result in any toll or other charge to the caller; that a separate charge will be assessed for each call to such numbers; and the total cost to consumers for each call to such telephone numbers;

B. Fails to disclose clearly and conspicuously upon answering calls received on defendants' pay-per-call telephone numbers that a charge will be assessed for the call; the amount of the charge, and that the caller may avoid any charge by hanging up within a specified time period;

C. Fails to disclose clearly and conspicuously and adequately prior to the time consumers are required to pay any money in connection with any credit card or credit-related service or program offered by defendants that:

(1) If any reference is made as to a consumer's credit eligibility or qualifications, the minimum qualifying criteria, if any, that consumers must meet in order for their credit card applications to be considered or processed by a credit card issuer, including but not limited to any age, income, credit history, or employment requirements;

(2) The amount of the savings deposit or collateral, if any, that consumers must provide as a condition to receiving a credit card; and

(3) The total charges that will be incurred by consumers in obtaining any credit card, including any processing or application fees and any charges for pay-per-calls.

D. Fails to disclose fully and adequately all information necessary for consumers to exercise their right to a refund, if such refund is offered.

### II.

**IT IS FURTHER ORDERED** that defendants R.M. Farmer, Douglas R. Deitel, and Scott T. Lick, each of them and their successors, assigns, officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any business entity, corporation, subsidiary, division, or other device, shall, in assisting others engaged in the advertising, marketing, offering for sale, or sale of any credit card or credit-related service or program to the general public, take reasonable steps to:

A. Evaluate the nature and content of such promotions, including but not limited to initially reviewing advertisements, sales scripts, and sales manuals before their use, interviewing officers and employees, and random checking of oral representations. Such evaluation shall be on a basis independent of defendants' clients or customers and shall commence with the beginning of the business relationship and continue on a regular basis throughout the relationship;

B. Determine the nature of the credit card or credit-related services or programs being offered, the terms or conditions of sale of such services, the representations made to consumers, the truthfulness of the representations, the adequacy of any disclosures, and the number and nature of consumer complaints concerning such services or programs;

C. Investigate all complaints received by defendants from third parties, such as consumers, telephone companies, government agencies, and better business bureaus, regarding any promotion or sale of credit card or credit-related services or programs; and

D. Cease to provide any services whatsoever to any persons once defendants have reason to believe (either through steps taken pursuant to the requirement of Section II of this Order or otherwise) that such persons have engaged in deceptive practices towards consumers, including but not limited to acts or practices set forth in Section I of this Order.

### III.

**IT IS FURTHER ORDERED** that defendants R.M. Farmer, Douglas R. Deitel, and Scott T. Lick, each of them and their successors, assigns, officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any business entity, corporation, subsidiary, division, or other device, in connection with the advertising, marketing, offering for sale or sale of any credit card or credit-related service or program to the general public, including Visa and MasterCard credit cards, through the use of "900," "976,"

other pay-per-call information service or by any other means, are enjoined from ever making, or assisting in the making of, directly or by implication, orally or in writing, any misrepresentations about the costs, availability, terms, conditions, or limitations of obtaining Visa, MasterCard, or any other credit cards.

### IV.

**IT IS FURTHER ORDERED** that defendants Robert M. Farmer, Douglas R. Deitel, and Scott T. Lick are jointly and severally liable for any amount owed plaintiff under the Court's Orders.

Any and all funds received from defendants, and any interest received thereon, shall fully satisfy all monetary claims asserted by the Commission in the complaint filed herein and shall be used to provide redress to purchasers of defendants' services and pay any attendant administrative expenses. If the FTC determines, in its sole discretion, that redress to consumers is wholly or partially impracticable, any funds not so used shall be deposited into the United States Treasury.

Funds paid pursuant to this Section shall be in the form of a certified or cashiers check.

### V.

**IT IS FURTHER ORDERED** that for a period of five (5) years from entry of this Order, defendants and their successors and assigns shall notify the Associate Director of Credit Practices of the FTC, 6th and Pa. Ave., N.W. Washington, D.C. 20580 at least thirty (30) days prior to any proposed change in their business address.

### VI.

**IT IS FURTHER ORDERED** that for a period of five (5) years from the date of entry of this Order, each defendant shall promptly notify the Associate Director of Credit Practices of the FTC, 6th and Pa. Ave., N.W. Washington, D.C. 20580, of the discontinuance of his present business or employment and of his affiliation with any new business

or employment, each such notification to include the defendant's new business address and a statement of the nature of the business or employment in which the defendant is newly engaged as well as a description of defendant's duties and responsibilities in connection with the business or employment; provided, however, that if any of the defendants engage in a business offering or promoting "900" number or pay-per-call information service or credit cards, the notification period shall be ten (10) years from the date of entry of this Order.

## VII.

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, offering for sale, or sale of any credit card or credit-related service or program, through the use of "900," "976," other pay-per-call information service or by any other means, defendants R.M. Farmer, Douglas R. Deitel, and Scott T. Lick, each of them and their successors or assigns shall, for a period of five (5) years from the date of the entry of this Order:

A. With respect to any corporation, subsidiary, division, business entity, or other device owned, managed, or controlled by any defendant, create, maintain, and make available to representatives of the Commission, upon reasonable notice, books, records, and accounts which, in reasonable detail, accurately and fairly reflect the income, disbursements, transactions, and use of monies by each corporation or other business entity;

B. Create, maintain, and make available to representatives of the Commission, upon reasonable notice, records relating to such credit card or telephonic information service, provided that such records must include copies of all contracts or agreements between any of the defendants and any consumer, information provider, financial institution, telephone company and/or telephone service common carrier and/or any media through which defendants advertise or promote their goods and services, as well as copies of all advertisements, promotional materials and audio and visual tapes utilized in the advertisement, promotion, or provision of such goods or services.

C. Create, maintain and make available to representatives of the Commission, upon reasonable notice, records that, for every consumer complaint or refund request reflect: the consumer's name, address, telephone number; amounts paid by the consumer; the date of the complaint or refund request; the date of any action taken by either of the defendants in response to the complaint or refund request; the amount refunded to the consumer, if any, and, in the event of a denial by either of the defendants of a refund request, the reason for such denial;

D. Immediately provide a copy of this Order to, and obtain a signed and dated acknowledgement of receipt of this Order from, each of their divisions, subsidiaries, corporations, affiliates, successors, assigns, directors, officers, managers, agents, representatives and independent contractors who, on behalf of defendants, are associated or involved in the advertising, marketing, offering for sale, or sale of any credit card or credit-related service or program offered by defendants; and

E. Maintain, and upon reasonable notice, make available to representatives of the Commission, the original and dated acknowledgement of receipts of copies of this Order as required by Paragraph D above.

## VIII.

**IT IS FURTHER ORDERED** that defendants and their successors and assigns shall, within sixty (60) days after the date of service of this Order, file with the Associate Director of Credit Practices of the FTC, a preliminary report and, within one hundred-fifty (150) days after the date of service, a supplemental report, in writing, setting forth in detail the manner and form in which they have complied with this Order.

## IX.

**IT IS FURTHER ORDERED** that defendants waive any rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412.

X.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this matter for the purpose of enabling any of the parties to apply to the Court at any time for such further orders or directives as may be necessary or appropriate.

**SO ORDERED.**