104 F.3d 1168
 1997-1 Trade Cases P 71,672, 97 Cal. Daily
Op. Serv. 2662,
97 Cal. Daily Op. Serv. 361,
97 Daily Journal D.A.R. 4753,
97 Daily Journal D.A.R. 591
FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
PUBLISHING CLEARING HOUSE, INC., a corporation, dba
Publishing Clearing House and the Clearing House, Defendant,
and
Lorin Martin, aka Lori Martin, individually and as an
officer of said corporation; Raymond Reed,
Defendants-Appellants.
 No. 95-16018.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 10, 1996.*
Decided Jan. 15, 1997.
As Amended April 11, 1997.
 
 Paul E. Wommer, Las Vegas, NV, for defendants-appellants.
 Joanne L. Levine, Federal Trade Commission, Washington, D.C., and Ralph E. Stone and Jerome M. Steiner, Jr., Federal Trade Commission, San Francisco, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Nevada, Philip M. Pro, District Judge, Presiding. D.C. No. CV-94-00623-PMP/LRL.
 Before: FLETCHER, WIGGINS, and T. G. NELSON, Circuit Judges.
 T. G. NELSON, Circuit Judge:
 
 
 1
 Lorin Martin ("Martin") timely appeals the district court's order granting summary judgment in favor of the Federal Trade Commission. We have jurisdiction under 28 U.S.C. § 1291. We affirm.[1]
 
 FACTS
 
 2
 From late December 1993 through March or April 1994, Publishing Clearing House ("PCH")[2] operated a nationwide telemarketing business in Las Vegas, Nevada. At the direction of Robbin McLaurin (who is the subject of related criminal and civil appeals pending in this court, Nos. 96-10057 and 95-16893), Martin became the president of PCH and applied for PCH's business license. She worked at PCH for one week, answering incoming calls and performing routine office duties. Martin had previously worked for McLaurin as a telephone solicitor at the National Clearing House ("NCH"), another telemarketing operation.
 
 
 3
 Working from a script, PCH's telephone solicitors told potential consumers that they were guaranteed to win one of four prizes: a $50,000.00 annuity, a $25,000.00 gold rush (sometimes described as a bond), $5,000.00 cash, or $3,500.00 cash. A consumer could claim a prize by making a donation to a particular charity, such as "For the Children" or "H.O.P.E." ("Helping Other People Exist"). This pitch was almost identical to the solicitation scripts used by NCH, PCH's predecessor.[3]
 
 
 4
 Like the NCH scheme, PCH's policy was to seek a minimum donation of $1,000.00, but many consumers were induced to donate far greater amounts. Approximately thirty days after the first donation, PCH solicitors called consumers again for a "reload" in order to solicit an additional donation. Some consumers received a wooden plaque, flowers, candy, or a small elephant sculpture, but none of the major prizes were awarded.
 
 
 5
 PCH solicitors also misrepresented the activities and status of the charitable organizations H.O.P.E. and For the Children. Solicitors incorrectly told consumers that their donations would be tax deductible. For the Children was incorporated as a nonprofit corporation on December 16, 1993, ten days after PCH was incorporated. H.O.P.E. applied for a license to solicit funds on the same day that Martin applied for PCH's business license. H.O.P.E.'s sole charitable activities consisted of $15,000.00 gifts to the Red Cross and the Lymphatic Center. According to PCH's records, consumers (most of them elderly) sent PCH at least $361,310.79.
 
 
 6
 On July 14, 1994, the FTC brought this action under Sections 5 and 13(b) of the Federal Trade Commission Act, alleging that PCH; Martin; Raymond Reed ("Reed"), a telephone solicitor for PCH; and others had violated Section 5 (15 U.S.C. § 45), which prohibits "unfair or deceptive acts or practices in or affecting commerce." The complaint alleged that the defendants misrepresented to consumers that they had won one of several valuable prizes and that donations would be tax-deductible.
 
 
 7
 The district court issued an ex parte temporary restraining order which was transformed into a preliminary injunction on August 1, 1994. In January 1995, the FTC moved for summary judgment against PCH, Martin, and Reed. Reed and Martin filed affidavits opposing the motion; PCH did not respond at all. On March 8, 1995, the district court issued a memorandum and order granting summary judgment in favor of the FTC against PCH, Martin, and Reed and permanently enjoined PCH, Martin, and Reed from engaging in any telemarketing operation. On May 12, 1995, the district court held that PCH and Martin, as president, were jointly liable for $361,310.79 (the amount consumers donated), and ordered restitution in that amount. This timely appeal followed.
 
 DISCUSSION
 
 8
 We review the district court's summary judgment order de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Our review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197. Once the FTC has made a prima facie case for summary judgment, the defendant cannot rely on general denials; she must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 256-57, 106 S.Ct. 2505, 2510-11, 2514-15, 91 L.Ed.2d 202 (1986).
 
 
 9
 Martin argues that she cannot be held individually liable for misrepresentations made by solicitors at PCH because she did not have the "requisite knowledge" of those misrepresentations. This argument does not create a genuine issue of material fact that can defeat summary judgment.
 
 
 10
 There is no dispute that Martin is the president of PCH. As an officer, Martin
 
 
 11
 may be held individually liable for injunctive relief under the [Federal Trade Commission Act] for corporate practices if the FTC can prove (1) that the corporation committed misrepresentations or omissions of a kind usually relied on by a reasonably prudent person, resulting in consumer injury, and (2) that [Martin] participated directly in the acts or practices or had authority to control them.
 
 
 12
 FTC v. American Standard Credit Systems, Inc., 874 F.Supp. 1080, 1087 (C.D.Cal.1994). Martin does not contest the first element. Regarding the second element, Martin's assumption of the role of president of PCH and her authority to sign documents on behalf of the corporation demonstrate that she had the requisite control over the corporation. See FTC v. Amy Travel Service, Inc., 875 F.2d 564, 573-74 (7th Cir.), cert. denied, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); FTC v. Sharp, 782 F.Supp. 1445, 1450 (D.Nev.1991). Martin's activities included obtaining and signing PCH's business license and signing the fund-raising agreement between PCH and H.O.P.E. H.O.P.E.'s application to conduct charitable solicitation identified Martin as the person "in direct charge of conducting the solicitation."
 
 
 13
 Martin asserts that she filed PCH's business application naming her as president only because McLaurin had convinced her that he could not legally open a telemarketing business in his name due to pending criminal charges. She also argues that the fact that she worked at PCH for only one week answering phones should negate her liability. However, other than statements in the appellate brief, Martin has never offered any evidence to support these factual assertions. Her affidavit filed in opposition to summary judgment made no mention of these facts. A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1993); United States v. One Parcel of Real Property, 904 F.2d 487, 492 n. 3 (9th Cir.1990). The same can be said regarding conclusory, self-serving statements in appellate briefs. They are insufficient to create a genuine issue of material fact. Mitchel v. General Electric Co., 689 F.2d 877, 878-79 (9th Cir.1982).
 
 
 14
 Some courts, including district courts in this circuit, have held that to find Martin liable for restitution, the FTC must also show that Martin
 
 
 15
 had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted.
 
 
 16
 American Standard Credit Systems, 874 F.Supp. at 1089. See also Amy Travel Service, 875 F.2d at 573-74 (citing several district court decisions with approval). To satisfy the knowledge requirement, the FTC must show that Martin
 
 
 17
 had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.
 
 
 18
 American Standard Credit Systems, 874 F.Supp. at 1089. See also Amy Travel Service, 875 F.2d at 574; FTC v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 859-60 (D.Mass.1992); Sharp, 782 F.Supp. at 1450. However, the FTC is not required to show that a defendant intended to defraud consumers in order to hold that individual personally liable. See Amy Travel Service, 875 F.2d at 574. We agree with these holdings.
 
 
 19
 Martin was at least recklessly indifferent with regard to the truth or falsity of the misrepresentations made by PCH employees. She filed PCH's business license at the direction of someone she knew was facing criminal charges concerning his telemarketing activities. She had worked as a telephone solicitor for NCH, PCH's predecessor, which had been closed down due to a criminal fraud investigation. She signed the contract with H.O.P.E. and knew that the charity would receive no more than 10% of the money raised by PCH. In the absence of any evidence offered by Martin to counter these facts, the district court correctly held Martin jointly liable with PCH for the company's fraudulent activities.
 
 CONCLUSION
 
 20
 After carefully reviewing the record in this case and considering all of Martin's arguments on appeal, we AFFIRM the district court's order granting summary judgment in favor of the FTC and holding Martin jointly liable for PCH's fraudulent activities.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 [1]
 Other issues raised by Martin and Raymond Reed are addressed in an unpublished memorandum disposition issued contemporaneously
 
 
 [2]
 "Publishing Clearing House" and "PCH," as mentioned herein, have no connection with the well-known and reputable Publishers Clearing House, which uses "PCH" as its service mark registered with the United States Patent and Trademark Office
 
 
 [3]
 NCH was closed due to its alleged participation in fraudulent telemarketing activities. Its activities are the subject of a similar appeal pending in this court following the grant of summary judgment in favor of the FTC (No. 95-16893)