**FEDERAL TRADE COMMISSION,**
Plaintiff–Appellant,

v.

**Steven Patrick GARVEY, aka Steve Garvey; Garvey Management Group, Inc.; Lark Kendall, aka Kendall Carson; Mark Levine, individually and as an Officer and Director of Modern Interactive Technology, Inc.; David Richmond, individually and as an Officer and Director of Modern Interactive Technology, Inc.; Modern Interactive Technology, Inc., Defendants–Appellees.**

No. 03–55179.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 2004.

Filed Sept. 1, 2004.

---

John F. Daly, Deputy General Counsel for Litigation, (argued), and Melvin H. Orlans, Special Litigation Counsel, (brief) Federal Trade Commission, Washington, DC, for the appellant.

Edward F. Glynn, Jr., Washington, DC, for the appellees.

Before PREGERSON, McKEOWN, and BYBEE, Circuit Judges.

PREGERSON, Circuit Judge:

The Federal Trade Commission ("FTC") appeals a ruling on summary judgment that its suit against Mark Levine, David Richmond, and Modern Interactive Technology, Inc. (collectively, the "Modern Interactive defendants") is barred by res judicata. The FTC also appeals the ruling, following a bench trial, that Steven Patrick Garvey and Garvey Management Group, Inc. (collectively, the "Garvey defendants") relied on adequate substantiation and therefore are not liable for Garvey's advertising claims for the weight loss product at issue in this case.

For the reasons discussed below, we reverse in part and affirm in part.

## BACKGROUND

### A. *The Enforma System and Its Marketing*

This lawsuit arises out of the marketing of a weight loss system sold by Enforma Natural Products, Inc. ("Enforma").[1] Enforma created and marketed two dietary supplements, "Fat Trapper" (or "Fat Trapper Plus") and "Exercise in a Bottle." Together, these two products constitute the "Enforma System." The Fat Trapper product contains chitosan and is a mixture of the shells of certain seafood. It alleged-

---

1. As discussed further below, Enforma is not a party to this action. The FTC, Enforma, and two of Enforma's principals entered into a stipulated judgment in another case in May 2000.

ly "surrounds the fat in the food you eat and entraps it," preventing fat absorption. Exercise in a Bottle contains pyruvate, which is found naturally in the body, and allegedly helps enhance one's metabolism.

Modern Interactive Technology, Inc., is a video production company that specializes in producing television infomercials. David Richmond and Mark Levine are the Chief Executive Officer and the President, respectively, of Media Interactive Technology, Inc., and each owns fifty percent of the company. In conjunction with the marketing of its products, Enforma retained Modern Media, a subsidiary of Media Interactive Technology, Inc., to prepare two thirty-minute infomercials.

Following the advice of Modern Media, Enforma hired Steven Patrick Garvey to star in the infomercials and to be a spokesperson for the Enforma System. Garvey is a retired first baseman for the Los Angeles Dodgers. Garvey entered into a memorandum agreement with Enforma in October 1998. That agreement was superseded by an Amended and Restated Agreement between Garvey Management Group, Inc., a Utah corporation that oversees various activities relating to Garvey's celebrity status, and Enforma. The Amended and Restated Agreement took effect January 1, 1999.

Three or four weeks before the filming of the first infomercial, Enforma's Executive Director of Marketing, Michael Ehrman, gave Garvey and his wife a supply of the Enforma System. Between that time and the time of filming, Garvey used the Enforma System and lost approximately eight pounds. Between the filming of the first infomercial and the date the infomercial was broadcast, Garvey's wife used the Enforma System and lost approximately twenty-seven pounds. At some point, Garvey also received two booklets produced by Enforma, which provided information about Fat Trapper and Exercise In A Bottle.

The infomercials were produced after a number of meetings between Enforma and Modern Media representatives. At these meetings, Enforma's President and Chief Executive Officer, Andrew Grey, and Mr. Ehrman explained their advertising concepts and claims to Levine. Levine was primarily responsible for drafting the scripts.

Two or three days before the filming of the first infomercial, Garvey received a draft script. There had been as many as fifteen prior drafts that Garvey never saw. Garvey did not see a final version of the script until Grey rewrote it on the infomercial soundstage. Before filming began, Garvey made minor, non-substantive edits to the script to ensure that it matched his own speech patterns and vocabulary preferences.

The process leading up to the second infomercial was similar, although the second infomercial was less scripted than the first. Garvey did not receive the script until two days before filming; there were at least three versions of the script that Garvey did not see. Garvey made similar, non-substantive edits to the script for the second infomercial.

During both infomercials Garvey largely read from the prepared scripts. He and his co-host, Lark Kendall, ad libbed when conducting a demonstration of the Fat Trapper product, but even then, Levine, Richmond, and Grey provided them with a framework for their dialogue. In the infomercials, Garvey made a number of statements regarding the Enforma System, including:

- "Now, if you're tired of trying every new fad diet, if you're tired of trying to work a rigid exercise regime into your busy schedule, if you want to be

able to enjoy all those delicious foods that you crave without the guilt while losing weight and keeping it off, call us now . . . ."

- "If you're having trouble losing weight, if you're tired of depriving yourself of all those wonderful and delicious foods that you love, if you find that you don't have the time to exercise as much as you'd like, the Enforma System is the miracle you've been waiting for. It's all natural, it's safe and it works."

- "I love this. So, you can enjoy all these delicious foods like fried chicken, pizza, cheeseburgers, even butter and sour cream, and stop worrying about the weight."

- "The Enforma System has inspired so many to embrace a healthier, more active lifestyle, making good food choices, exercising more and everyone is here to celebrate a system that can end binge dieting forever, because with Enforma you trap the fat from food before it can go to your waistline."

- "[L]ook at all these delicious supposedly forbidden foods; barbecued chicken and ribs, buttered biscuits. Foods you can eat when you crave them without guilt, and it's all because of a few little capsules."

- "Forget all those complicated, expensive diets that deprive you. With all natural Fat Trapper and Exercise in a Bottle—the Enforma System—you simply take Exercise in a Bottle twice a day and Fat Trapper before any meal that contains fat. Then go ahead and enjoy the foods that you love without the fear of fat. It's that easy."

The filming, editing, and graphics design for both infomercials were directed by Richmond. Grey or Ehrman oversaw these activities and approved the results on behalf of Enforma. Garvey was not present during the editing and graphic design stages of production. Together, the two infomercials were aired almost 48,000 times throughout the United States from December 1998 through May 2000.

After filming the two infomercials, Garvey made several radio and television appearances to promote the Enforma System. His statements at these appearances were based on script points and guidelines provided by Enforma.

From December 1998 to December 2000, Enforma's sales of Fat Trapper, Fat Trapper Plus, and Exercise in a Bottle exceeded $100 million.

### B. *The* Enforma *Action*

The FTC began investigating claims made regarding the Enforma System in 1999. Settlement negotiations between Enforma, Grey, and Fred Zinos, Enforma's Vice President of Sales and Marketing, took place during the winter of 1999–2000 and went into the Spring of 2000.

On April 25, 2000, the FTC filed suit against Enforma, Grey, and Zinos ("the *Enforma* action"). The FTC's complaint alleged that the defendants, in marketing the Enforma System, undertook deceptive acts or practices and issued false and misleading advertising of a food, drug, device, service, or cosmetic in violation of Sections 5(a) and 12 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45(a) and 52.[2] In that action, the FTC sought an

---

**2.** Section 5(a) of the FTCA states, among other things, that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). Section 12 of the FTCA declares unlawful the dissemination of false advertisements, by certain means, which are

injunction to prevent further violations of the FTCA, equitable relief aimed at redressing consumers' injuries, and costs.

A proposed Stipulated Final Order settling the *Enforma* action as to Enforma and Grey (the "Enforma defendants") was filed along with the complaint, and it was entered by Judge J. Spencer Letts on May 11, 2000.[3] This settlement prohibited Enforma and Grey from undertaking specific conduct, such as making certain representations about Enforma's products without reliable scientific support. The settlement also required Enforma and Grey to pay $10 million to the FTC.

## C. *The Instant Case*

In March 2000, the FTC served civil investigative demands on Levine and Garvey. The FTC filed a complaint against the Garvey defendants, the Modern Interactive defendants, and Lark Kendall on August 31, 2000.[4] This complaint was similar to that filed in the *Enforma* action; it alleged that the defendants, in marketing the Enforma System, violated Sections 5(a) and 12 of the FTCA.

The district court granted summary judgment in favor of the Modern Interactive defendants. The court concluded that, in light of the settlement in the *Enforma* action, the claims against them were barred by res judicata. On September 19, 2001, the district court denied the FTC's motion to reconsider this ruling.

The district court held a three-day bench trial on the FTC's claims against the Garvey defendants. On November 25, 2002, the district court issued its findings of fact and conclusions of law and entered

judgment in favor of the Garvey defendants. The court concluded that Garvey could not be held liable under a "participant" theory of liability. The court found that Garvey did not have actual knowledge of any material misrepresentations, that he was not recklessly indifferent to the truth or falsity of any representations he made, and that he was neither aware of a high probability that he was making fraudulent representations nor intentionally avoiding the truth with respect to the qualities of the Enforma System. *Cf. FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997). The district court also found that Garvey could not be held liable as an "endorser" because there was no evidence showing that his statements did not reflect his good faith belief and opinions and there was reasonable substantiation for the statements he made.

The FTC appeals the summary judgment order, the order denying the motion for reconsideration, and the order and judgment issued after the bench trial.

## ANALYSIS

### A. *Summary Judgment: The Modern Interactive Defendants*

#### 1. *Standards of Review*

"We review a district court's grant of summary judgment on res judicata grounds *de novo.*" *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir.2001). The district court's refusal to reconsider summary judgment is reviewed for an abuse of discretion. *Minn. Mut. Life Ins.*

---

likely to induce the purchase of food, drugs, devices, services or cosmetics. 15 U.S.C. § 52. Section 12 defines the dissemination of such advertisements as unfair or deceptive acts under Section 5. *Id.*

**3.** A separate consent decree that addressed the claims against Mr. Zinos was entered on May 10, 2000.

**4.** Lark Kendall settled with the FTC on November 15, 2000.

*Co. v. Ensley,* 174 F.3d 977, 987 (9th Cir. 1999).

2. *Discussion*

■■■ Res judicata, or claim preclusion, "bars any lawsuits on any claims that were raised or could have been raised in a prior action." *Providence Health Plan v. McDowell,* 361 F.3d 1243, 1249 (9th Cir. 2004) (quotation marks, emphasis, and citation omitted). Claim preclusion applies if there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* (quotation marks and citation omitted). Here, there is no dispute that the Stipulated Final Order in the *Enforma* action constitutes a final judgment on the merits. Instead, the FTC claims that the district court erred in concluding that there was identity of claims and identity or privity between the parties. Because we find that privity does not exist, we decline to discuss identity of claims. .

■■■ " 'Privity'—for the purposes of applying the doctrine of res judicata—is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels,* 127 F.3d 875, 881 (9th Cir.1997) (citation and quotation marks omitted). Privity is a "flexible concept dependent on the particular relationship between the parties in

each individual set of cases...."[5] *Tahoe–Sierra Pres. Council,* 322 F.3d at 1081–82; *see also Va. Sur. Co. v. Northrop Grumman Corp.,* 144 F.3d 1243, 1247 (9th Cir. 1998) ("It is the identity of interest that controls in determining privity, not the nominal identity of the parties." (quotation marks and citation omitted)).

The district court found the Modern Interactive defendants in privity with the defendants in the *Enforma* action "because of the high degree of involvement they had in creating the infomercial's content." The district court also found that the Modern Interactive defendants were tantamount to "co-conspirators" with Enforma. Finally, the district court found that the broad language of the Stipulated Final Order in the *Enforma* action evidences the FTC's intent to enjoin conduct by the Modern Interactive defendants based on that order. The district court concluded: "Where the FTC elected to sue only some of the potentially liable parties for the injuries described in the complaint, proceeded to judgment against those parties, and crafted a decree enjoining further conduct by those parties and their privies, the FTC should not, in all fairness, be allowed to subsequently seek additional monetary relief from those privies."

We disagree with the district court's conclusions. Despite some complicating factual issues discussed below, we find that

**5.** In *In re Schimmels,* we demonstrated the flexibility of the concept of privity by providing a number of examples where privity has been found. These include: (1) where a non-party has succeeded to a party's interest in property; (2) where a non-party controlled the original suit; (3) where the non-party's interests were adequately represented by a party in the original suit; (4) where there is a "substantial identity" between the party and the non-party; (5) where the non-party had a significant interest and participated in the prior action; (6) where the interests of the non-party and the party are so closely aligned as to be virtually representative; and (7) where there is an express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues. 127 F.3d at 881. One prominent authority, acknowledging this flexibility, notes that "it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4449 at 351 (2d ed. 2002 & 2004 Supp.).

the defendants in the first action were not sufficiently connected to the Modern Interactive defendants to justify barring the FTC's claims against the Modern Interactive defendants. Most significantly, there is no indication that the defendants in the *Enforma* action were acting on behalf of the Modern Interactive defendants. This conclusion is supported by evidence that Enforma knew that the FTC was pursuing and intended to continue pursuing other defendants around the time that the Stipulated Final Order was entered.[6] An FTC attorney submitted a declaration stating that he gave Enforma's counsel notice that the FTC was pursuing additional parties and that the settlement would not bar subsequent enforcement actions against those parties.[7]

Our conclusion is complicated somewhat by the undisputed fact that Enforma agreed to indemnify the Modern Interactive defendants. Res judicata may bar a claim brought against an indemnitee where the same claim has already been pursued against the indemnitor.

> If a second action can be maintained against the indemnitee, either the indemnitee must be allowed to assert his right of indemnification or the right must be defeated by the judgment in favor of the indemnitor. To allow the right of indemnification would be to destroy the victory won by the indemnitor in the first action. To deny the right of indemnification would be to destroy the

indemnitee's right by the result of an action in which he took no part. It is far better to preclude the third person, who has already had one opportunity to litigate, and who often could have joined both adversaries in the first action.

18A Wright, Miller & Cooper, *supra*, § 4463; *see also Levy v. United States*, 776 F.Supp. 831, 836 (S.D.N.Y.1991) ("This Court holds that a plaintiff who has litigated a claim in a prior action may not sue a new party on the same claim in a second action if that new party could seek indemnification from a litigant in the initial action."). But this rule only makes sense when the indemnitor is, in the first action, acting *in its capacity as indemnitor*. If the indemnitor is sued for its own actions and is not sued as an indemnitor for the acts of another, the rationale favoring preclusion no longer holds. While Enforma is technically an indemnitor, there is no indication that Enforma was acting in this role in the first lawsuit. To the contrary, Enforma, as the producer of the controversial weight-loss system at issue, was being pursued directly for its own actions. In fact, as the FTC attorney's declaration indicates, Enforma likely knew that it was being pursued directly and that its settlement would not bar subsequent claims for indemnification by other parties that the FTC was also pursuing. Therefore, we find that the indemnification agreement does not establish privity for res judicata purposes in this suit.

---

6. Generally speaking, the pursuit of a claim against one individual will not bar the pursuit of the same claim against another. *See* Restatement (Second) of Judgments § 49 (1982) ("A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."); *id.* § 49 cmt. a ("Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.").

7. "The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." 18A Wright, Miller & Cooper, *supra*, § 4443 at 262. The fact that the Enforma defendants knew about the ongoing investigation of other defendants is therefore relevant in considering how to construe the Stipulated Final Order for res judicata purposes.

An additional complication involves the terms of the Stipulated Final Order. The Stipulated Final Order enjoins specific conduct by Enforma and Grey as well as their "agents" and "all other persons or entities in active concert or participation with them, who receive actual notice" of the order.[8] The Modern Interactive defendants essentially argue, and the district court seemingly found, that because the Stipulated Final Order binds the Modern Interactive defendants, they should be found in privity with Enforma in this action. We do not agree. The compensation ordered by the Stipulated Final Order is clearly required of only the two named defendants in that action. While the Modern Interactive defendants appear to be bound by the prospective injunctive relief set forth in the order, this fact does not necessarily render them in privity with the Enforma defendants. For example, the injunctive relief would apply equally to a heretofore unknown marketing company that Enforma might contact today; certainly this new company's interests were not specifically contemplated or represented by Enforma in the first action. The Modern Interactive defendants are, for these purposes, no different.

In our view, the best argument for applying res judicata in this case is the public interest in putting an end to litigation. Applying res judicata to bar the FTC's claim here would effectively place the burden on the FTC to bring all known defendants into the same case. This would prevent the unnecessary multiplication of lawsuits. Indeed, despite the FTC's arguments to the contrary, there is evidence that the FTC knew about the Modern Interactive defendants' (as well as the Garvey defendants') role in the marketing of the Enforma System before filing the first lawsuit. Ruling on the FTC's motion for reconsideration, the district court noted that the FTC knew as early as March 26, 1999, about Modern Media's involvement in the first infomercial and knew as early as December 11, 1999, about Modern Media's involvement in the second infomercial. *Cf. Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir.1995) (noting that whether a plaintiff did not have enough information to name a particular defendant in a prior action is relevant when assessing the availability of a claim for res judicata).

Nevertheless, we find that the scale tips in favor of not barring the FTC's instant action against the Modern Interactive defendants. The concerns outlined above about Enforma's knowledge of the FTC's ongoing investigation indicate that Enfor-

---

8. There is considerable debate about the scope of this order, who it binds, and whether it contains a drafting error. The problem arises from the fact that the Stipulated Final Order actually defines the term "defendants" twice; once as the two named defendants and once as the named defendants and a broad array of unnamed individuals working with them. It appears that the Stipulated Final Order, despite the broad definition of "defendants" used once, consistently uses the narrow definition of "defendants," referring only to the two named defendants. For example, in setting forth the prospective injunctive relief, the order always specifically enjoins "defendants" *and* "their officers, agents, servants, [etc.]" Were the expanded definition of "defendants" used throughout, the additional language would be mere surplusage. Further, where awarding the monetary relief, the order refers only to "defendants" without the additional language. It is fairly clear that the monetary relief provisions were only intended to apply to the two Enforma defendants. For instance, the Stipulated Final Judgment requires the "defendants," as part of this payment, to sign a promissory note, which is attached as an appendix. The promissory note only has signature lines for Enforma and Grey. As the FTC points out, no one seriously believes that the FTC could have pursued anyone but the two named defendants for the $10 million.

ma understood itself to be representing solely its own interests in the prior proceeding. In fact, given the allegations regarding what Enforma knew about the FTC's ongoing investigations, applying res judicata here would likely reward gamesmanship by the Modern Interactive defendants and Enforma in its role as indemnitor.

Therefore, we reverse the district court's summary judgment ruling barring the FTC's claim against the Modern Interactive defendants.

### B. Bench Trial: The Garvey Defendants

#### 1. Standards of Review

Following a bench trial, the trial judge's findings of fact are reviewed for clear error. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002). " 'This standard is significantly deferential, and we will accept the lower court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed.' " *N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095 (9th Cir. 2002) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1076 (9th Cir.2002)). The district court's conclusions of law following a bench trial are reviewed *de novo*. *Brown v. United States*, 329 F.3d 664, 671 (9th Cir. 2003).

#### 2. Discussion

The FTC argues that Garvey can be held liable under Sections 5(a) and 12 of the FTCA either as a "direct participant" in the making of false advertising claims or

under the principles of "endorser" liability. We discuss each in turn.

#### a. "Direct Participant" Liability

In *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir.1997), an action brought pursuant to Sections 5 and 13(b) of the FTCA,[9] we held that an individual may be subject to injunctive relief if the FTC can prove that an individual "participated directly" in the acts in question or "had authority to control them." *Id.* at 1170 (citation omitted). We concluded that, to hold an individual liable for restitution, the FTC must also show that the individual had actual knowledge of the material misrepresentations, was recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth. *Id.* at 1171 (citation omitted). The district court employed these standards here but did not distinguish between injunctive relief and restitution.[10]

##### i. "Participant"

The Garvey defendants do not seriously dispute that Garvey was a "participant." Instead, they attempt to short-circuit the FTC's appeal on this issue by arguing that the FTC has failed in meeting its burden of proving the falsity of the claims at issue. They point out that nothing in this case or in the *Enforma* action established that the claims made were false or unsubstantiated. The FTC does not argue that it proved the claims at issue were false and unsubstantiated. Instead, the FTC contends that "settled Commission law" imposes an obli-

9. Section 13(b) is simply the provision that permits the FTC to seek an injunction to stop or prevent a violation of the law. 15 U.S.C. § 53(b).

10. Given the broad language of the Stipulated Final Order, it apparently applies to the Gar-

vey defendants and likely provides the FTC all of the injunctive relief it could get against the Garvey defendants in this case. Therefore, as a practical matter, all the FTC stands to gain from the Garvey defendants here is restitution; the issue of injunctive relief is moot.

gation on an active participant in an advertising campaign to ascertain the existence of substantiation for the claims that the participant makes.

■ In *Publishing Clearing House,* we put the burden of proving falsity or deception on the FTC. We held that an individual "may be held individually liable for injunctive relief under the [Federal Trade Commission Act] for corporate practices *if the FTC can prove* [among other things] that the corporation committed misrepresentations or omissions of a kind usually relied on by a reasonably prudent person, resulting in consumer injury...." 104 F.3d at 1170 (citing *Am. Standard Credit Sys.,* 874 F.Supp. at 1087) (emphasis added). But in *FTC v. Pantron I Corp.,* 33 F.3d 1088 (9th Cir.1994), a Section 12 case, we presented a somewhat more nuanced picture:

> [T]he Commission has identified two theories on which the government can and often does rely in section 12 cases involving objective product claims. First, the government can assert a so-called "falsity" theory. To prevail on such a theory, the government must carry the burden of proving that the express or implied message conveyed by the ad is false. Alternatively, the government can rely on a so-called "reasonable basis" theory. To prevail on this theory, the government must show that the advertiser lacked a reasonable basis for asserting that the message was true.

*Id.* at 1096 (quotation marks and citations omitted); *cf. FTC v. Enforma Natural Prods., Inc.,* 362 F.3d 1204, 1217 n. 14 (9th Cir.2004) ("[In *Pantron I,*] the FTC had the burden of proving that the express or implied message conveyed by the advertising in question was actually false."). The "reasonable basis" theory supports the FTC's argument because it does not require the FTC to prove that the message

was false in order to prevail. "In determining whether an advertiser has satisfied the reasonable basis requirement, the Commission or court must first determine what level of substantiation the advertiser is required to have for his advertising claims. Then, the adjudicator must determine whether the advertiser possessed that level of substantiation." *Pantron I,* 33 F.3d at 1096. In this case, the "reasonable basis" theory essentially collapses into the knowledge requirement for restitution. The relevant inquiry in both contexts is, essentially: what did the individual know when making the claims at issue?

ii. The Knowledge Requirement

■ The district court concluded that Garvey had no actual knowledge of any material misrepresentations regarding the Enforma System. The FTC does not claim that this finding was erroneous. The district court also found the following evidence that provides substantiation for Garvey's advertising claims. First, Garvey himself used the system and lost approximately eight pounds during a three- or four-week period. Second, Garvey's wife, while using the Enforma System, lost approximately twenty-seven pounds between the filming of the first infomercial and the date the program was broadcast to the public. Third, Garvey received and reviewed two booklets containing substantiation materials for Fat Trapper and Exercise In A Bottle. These booklets were produced by Enforma Natural. Fourth, prior to the filming of the second infomercial, Garvey met and spoke with several individuals who had experienced "positive results" using the Enforma System. Fifth, Garvey learned of a pyruvate study published in the American Journal of Clinical Nutrition.

The FTC attempts, unconvincingly, to undercut the significance of this evidence.

The FTC argues that Garvey's weight loss was less than the amount by which his weight normally fluctuated during the course of a year. But Garvey clearly stated that his weight had been relatively stable and that, "once I started taking the Enforma System, I saw noticeable weight loss." The FTC also points out that Garvey's wife's weight loss followed childbirth, and she had lost weight after childbirth before. But the relevant testimony provides no indication as to how much she had lost at other times following childbirth or whether the weight loss occurred in a similar time span.

The FTC is also unpersuasive when pointing out flaws in the two booklets that Garvey reviewed. Although they may not conclusively establish the efficacy of the Enforma System, both booklets contain significant, relevant information. In its attack on the Fat Trapper booklet, the FTC states that the booklet does not even mention chitosan.[11] But the Fat Trapper booklet relates information regarding scientific studies and clearly indicates that fiber intake has been found to decrease fat digestibility. Chitosan either is a dietary fiber or is akin to dietary fiber. *See* Masami Morotomi & Masahiko Mutai, *In Vitro Binding of Potent Mutagenic Pyrolyzates to Intestinal Bacteria,* HHS, NCI, J. Nat'l Cancer Inst., July 1986, at 195–201 (listing chitosan as a dietary fiber along with corn bran, apple pulp, soy bean fiber, cellulose and chitin); Elena Portyansky Beyzarov, *Battling the Bulge: Only a Rather Scrawny Pharmacologic Army Is Available Now in the War Against Obesity,* Drug Topics, Aug. 21, 2000, at 51 ("Chitosan behaves as a weak anion exchange resin with viscosity properties similar to those of certain dietary fibers."). Even though the booklet may not explicitly mention chitosan, the booklet provides some relevant substantiation for the advertising claims made.

In its attack on the Exercise In A Bottle booklet, the FTC argues that the booklet does not support the contention that pyruvate use has been linked to an increased metabolic rate in humans. But the Exercise In A Bottle booklet points to findings that pyruvate supplementation significantly reduced fat accumulation in rats and pigs and states that pyruvate may cause fat and weight loss through increasing metabolism and fat utilization. It is reasonable for Garvey to have found that this information supported the representations he made.

In sum, we find that the FTC has failed to show that Garvey was recklessly indifferent to the truth of his statements or was aware that fraud was highly probable and intentionally avoided the truth. *See Publ'g Clearing House,* 104 F.3d at 1170–71. Garvey had first-hand anecdotal evidence of the efficacy of the Enforma System and had information that purported to present scientific bases for his claims. *Cf. Simeon Mgmt. Corp. v. FTC,* 579 F.2d 1137, 1143 (9th Cir.1978) (noting that, alone, anecdoctal evidence where individuals state that they "believe" a drug is effective cannot provide "substantial evidence of effectiveness"). We find that the substantiation he had was sufficient—at least for someone in Garvey's position[12]—to avoid participant liability.

11. The FTC apparently omitted significant portions of the Fat Trapper booklet from its excerpts of record. To the extent that the FTC's arguments rely on omissions in that booklet, we discount those arguments because the FTC violated Circuit Rules. *See* Ninth Circuit Rule 30–1.3("(a) In all appeals the excerpts of record shall include: ... (xi) any ... specific portions of any documents in the record that are ... necessary to the resolution of an issue on appeal."). The omitted portions of the Fat Trapper booklet may contain additional support for the representations regarding the Enforma System.

12. The Garvey defendants note that there is no settled standard for the level of inquiry to

### b. "Endorser" Liability

The FTC premises its "endorser" theory of liability on the FTC Guides Concerning Use of Endorsements and Testimonials in Advertising (the "Guides"). According to the Guides, an "endorsement" is "any advertising message ... which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser." 16 C.F.R. § 255.0(b). Among other things, the Guides state that "[e]ndorsements must always reflect the honest opinions, findings, beliefs, or experience of the endorser. Furthermore, they may not contain any representations which would be deceptive, or could not be substantiated if made directly by the advertiser." 16 C.F.R. § 255.1(a).

The FTC acknowledges that the Guides lack the force of law but contends that they are entitled to deference because of their persuasiveness.[13] Indeed, the Supreme Court has made clear that where, as here, an agency pronouncement is not necessarily entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the pronouncement's persuasiveness may nevertheless entitle it to respect. *See*

*Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 [(1944)], but only to the extent that those interpretations have the 'power to persuade,' *ibid.*"); *United States v. Mead Corp.*, 533 U.S. 218, 234–35, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) ("[A]n agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." (quotation marks and citations omitted)); *see also FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) ("This statutory scheme necessarily gives the[Federal Trade] Commission an influential role in interpreting § 5 and in applying it to the facts of particular cases arising out of unprecedented situations.").

But we decline to decide to what degree of deference the Guides may be entitled or whether the Guides can form an indepen-

---

which a commercial spokesperson is held when he or she is hired to participate in a television advertisement. In the context of the knowledge requirement, we find that the fact that the individual is merely a spokesperson is relevant. For instance, the requirement that she be "aware that fraud was highly probable and intentionally avoided the truth" clearly turns on subjective knowledge. Likewise, the "reckless indifference" standard implies that an individual's subjective understanding should be taken into account. *Cf.* 1 Dan B. Dobbs, The Law of Torts 51 (2001) (noting that for conduct to be reckless, "the defendant must be conscious of the risk"); William L. Prosser, The Law of Torts 185 (1971) (noting that reckless conduct "usually is accompanied by a conscious indifference to the con-

sequences ...."). Indeed, the FTC points out that, in assessing scientific material, Garvey was only required to examine the material from the perspective of a reasonable layperson. *See In re Am. Home Prods. Corp.*, 98 F.T.C. 136, 397–98 (1981).

13. 16 C.F.R. Part 17 states that the "[i]ndustry guides are administrative interpretations of laws administered by the Commission for the guidance of the public in conducting its affairs in conformity with legal requirements.... Failure to comply with the guides may result in corrective action by the commission under applicable statutory provisions." *Id.*

dent basis for spokesperson liability.[14] Such a determination is not necessary to the resolution of this case. Even if the Guides had the full force of law, we would find that Garvey is not liable under them.

The district court found that Garvey did not provide an endorsement as defined in the Guides. Specifically, the district court found that "[t]he Commission has failed to present ... any facts establishing that consumers are likely to believe that Garvey's statements with respect to the Enforma System reflect the opinions, beliefs, findings and experiences of a party other than Enforma Natural." The district court was presented with evidence from both sides on this issue. For example, the FTC pointed to statements made by Garvey in the infomercials that the Enforma System "works," that he "truly believe[s] that it] is the greatest weight loss program in history," that he is "convinced," that he "love[s] this," and that "this is the most amazing system that [he has] ever seen." Further, the FTC offered a rebuttal expert, Dr. Mazis, who testified that Garvey provided an endorsement. The Garvey defendants offered the expert testimony of Dr. Thomas Hollihan, who concluded that Garvey was not an endorser under the Guides.

Under the highly deferential standard of review for findings of fact, we affirm, with the narrow exception described below, the district court's conclusion that Garvey did not provide an endorsement. Because of the conflicting expert testimony and the fact that the statements in the infomercials do not necessarily reflect Garvey's, rather than Enforma's, beliefs, we are not "left with the definite and firm conviction that a

mistake has been committed." *N. Queen Inc.*, 298 F.3d at 1095 (quotation marks and citation omitted).

But Garvey did make at least a few statements during one appearance on a television show called "Night Talk" (not one of the infomercials) that appear to be clearly an endorsement under the Guides. On that show, the following exchange took place:

> MONICA: And I was wondering if you use the product and have you had success with it?
>
> ...
>
> STEVE GARVEY: Yeah. I've endorsed products through the years and we have a family philosophy and that is either we have to take the product or it has to be a product that we would be willing to give ou[r] children....
>
> I took the product. I was about 195.... My normal weight is about 190 and I got down to about 186, so I lost 9 pounds. My wife had just had our second son, Sean Fitzpatrick, and she ended up losing about 28, 29 pounds on the product.
>
> So it worked for both of us and that's why I ended up doing the infomercial because it worked.

As to these particular statements, the district court's findings of fact may have been clearly erroneous.[15]

 Nevertheless, we find that the FTC has still failed to meet its burden of proving liability under the Guides. As noted above, the Guides state that "[e]ndorsements must always reflect the honest opinions, findings, beliefs, or experience of

14. Given the tenor of the Guides, they in fact seem aimed at controlling the behavior of the advertisers rather than the endorsers themselves. *See* 16 C.F.R. §§ 255.0–255.5. In any case, this is an area of law that would benefit from clarification by Congress or the FTC.

15. Garvey's expert, Dr. Hollihan, apparently did not see this program when formulating his opinion that Garvey was not an endorser.

the endorser." 16 C.F.R. § 255.1(a). This part of the test for liability is not at issue; Garvey has asserted that all of his statements regarding the Enforma System were statements of his actual beliefs and experiences, and the FTC does not dispute this contention. The next element of endorser liability concerns substantiation. *See* 16 C.F.R. § 255.1 (stating that endorsements "may not contain any representations which would be deceptive, or could not be substantiated if made directly by the advertiser."). On the Night Talk program, Garvey's only statements of endorsement related to his and his wife's weight loss. The Garveys' weight loss is undisputed, and Garvey undoubtedly has first-hand knowledge of those facts. The endorsement claims—that he and his wife lost a certain number of pounds—clearly pass any substantiation requirement for celebrity endorsers.

Therefore, we find that, even if the Guides provided an alternative basis for liability, Garvey would not be liable as an "endorser" under the Guides.

## CONCLUSION

For the foregoing reasons, we reverse the district court's summary judgment on the FTC's claims against the Modern Interactive defendants. We affirm the district court's judgment in favor of the Garvey defendants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**